## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**David Clarke,**

           **Plaintiff,**

**v.**                                                    **Case No. 14-2526-JWL**

**Mortgage Lenders of America, LLC,**

           **Defendant.**

### MEMORANDUM & ORDER

Plaintiff David Clarke filed this suit against Mortgage Lenders of America, LLC ("MLOA"), his former employer, asserting that MLOA violated the Americans with Disabilities Act, 42 U.S.C. § 12101, by failing to engage in the interactive process to identify and implement reasonable accommodations for Mr. Clarke's medical conditions and by terminating Mr. Clarke's employment on the basis of his Type I diabetes and/or his traumatic brain injury. This matter is presently before the court on MLOA's motion for summary judgment on plaintiff's claims (doc. 34). As will be explained, the motion is granted.


**I.      Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff as the non-moving party. Plaintiff David Clarke began his employment as a Loan Officer with defendant Mortgage Lenders of America, LLC in December 2010. Prior to that time, plaintiff had seven years of experience in the mortgage lending industry. It is undisputed that the Loan Officer position requires organizational skills, the ability to multi-task, self-

motivation and solid communication and time-management skills.  Certain essential functions of the position include managing the loan process through the closing of the loan, including securing proper documentation and gathering the borrower's financial and credit information. When plaintiff submitted his resume to MLOA, he identified "organization" as one of his strengths.

When plaintiff interviewed for the Loan Officer position in November 2010, he notified David Fothergill and Emily Sappingfield (MOLA employees who were conducting the interview) that he had diabetes and that, as a result, he had to monitor and maintain his blood sugar levels.  Plaintiff did not request an accommodation because Mr. Fothergill and Ms. Sappingfield indicated that plaintiff, consistent with MLOA's policy applicable to all employees, could take his lunch at any time he deemed necessary or convenient.  During his interview, plaintiff also advised Mr. Fothergill and Ms. Sappingfield that he had a brain injury and that as a result of that injury he had difficulty organizing work-related details.  According to plaintiff, he advised them that he struggled to complete "small, detailed tasks" in light of his injury and he asked whether it was possible to "hire a processor and pay him/her out of [his] own pocket" so that plaintiff could focus on the sales aspect of the position rather than the detail-oriented aspects of the position.  MLOA rejected plaintiff's request.

During plaintiff's first several months at MLOA, he worked on a new team that struggled with performance and ultimately disbanded in July 2011.  At that time, plaintiff transferred to another sales team led by Brian Kirk.  When plaintiff met with Mr. Kirk for the first time in July 2011, he advised Mr. Kirk about his diabetes and his brain injury.  He did not request an accommodation with respect to those issues.  In December 2011, Mr. Kirk completed a

performance review with respect to plaintiff.  Plaintiff has no recollection of receiving the review or discussing with Mr. Kirk any of the performance-related issues identified in the review.  The written review indicates that plaintiff "struggles with organization as well as communicating with the operations staff.  He will need to plan his day better.  This includes responding to emails in a timely manner and having a task list every day."  As part of the performance review process, Mr. Kirk set plaintiff's monthly sales goal at $20,000 per month— the same amount established for all other members of the sales team.  Plaintiff never achieved his monthly sales goal and, from January 2012 through his dismissal in May 2012, plaintiff had the lowest earned fees from mortgage sales of any officer on Mr. Kirk's team.  In fact, plaintiff's cumulative fees from mortgage sales during that time period was $39,180.00—an amount just over half of the earned fees for the second lowest producer on Mr. Kirk's team.  In his affidavit, Mr. Kirk avers that customers and operations personnel often had to engage in last-minute attempts to gather necessary paperwork for plaintiff's loan files and that he received multiple complaints from customers and operations personnel that plaintiff failed to respond to emails and voice mails and that he often did not respond at all to loan processors' requests for information.  Plaintiff does not dispute the substance of Mr. Kirk's affidavit, but asserts only that Mr. Kirk never shared those complaints with him.

In March 2012, plaintiff experienced a "major hypoglycemic reaction" at his desk in the office.  According to plaintiff, he "started acting very strangely" and Mr. Kirk "saw what was going on" but walked right by plaintiff's desk without stopping to assist plaintiff or asking about plaintiff's well-being.  Plaintiff testified, however, that Pat Boyle, a friend and co-worker whose desk was next to plaintiff's desk, immediately recognized what was happening and assisted

plaintiff. According to plaintiff, Mr. Boyle "was the person there that had known me longer than anybody else, and so he knew what [that reaction] looked like."

On May 1, 2012, Mr. Kirk terminated plaintiff's employment and it is undisputed that Mr. Kirk was the sole decisionmaker with respect to the termination decision. According to Mr. Kirk, he made the decision to terminate plaintiff's employment because of plaintiff's overall poor performance, including low sales that had trended downward, poor communication with customers and internal operations staff and the poor quality of his loan files. Plaintiff testified that Mr. Kirk, at the outset of the termination meeting, told plaintiff that MLOA was "going to let him go" because of his "organization" and that "[t]his isn't going to work like this." According to plaintiff, he reminded Mr. Kirk that he had advised MLOA about his difficulties with organization during his interview and he told Mr. Kirk, "You can't fire me for that. That's a disability issue." Plaintiff testified that Mr. Kirk then said "Oh, well, your production is too low. That's really what we're dealing with here."

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.


## III.    Disability Discrimination

In the pretrial order, plaintiff asserts a claim for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553.  According to plaintiff, MLOA terminated his employment on the basis of his brain injury and/or his diabetes. To establish a prima facie case of employment discrimination under the ADA, plaintiff must present evidence that (1) he is disabled within the meaning of the ADA;[1] (2) he is qualified to perform the essential functions of his job with or without accommodations; and (3) he was terminated under circumstances which give rise to an inference that the termination was based on his disability.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (citations omitted).  If plaintiff is able to make such a showing, the burden shifts to MLOA "to articulate some legitimate, nondiscriminatory reason" for its actions.  *Carter v. Pathfinder Energy*

---

[1] Congress has provided three statutory definitions for "disability" under the ADA:  A plaintiff may show either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting 42 U.S.C. § 12102(1)).  In the pretrial order and in his submissions, plaintiff contends only that MLOA discriminated against him on the basis of an actual disability under subsection (A).  He does not contend that MLOA "regarded" him as disabled.

*Services, Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).   Plaintiff then bears the ultimate burden of showing that MLOA's proffered reason is in fact a pretext designed to mask discrimination.   *See id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

In its motion, MLOA contends that summary judgment is appropriate as to plaintiff's claim that MLOA terminated his employment on the basis of his claimed brain injury because plaintiff has come forward with no evidence that his brain injury substantially limits one or more of plaintiff's major life activities such that his prima facie case fails as to the first element.   With respect to plaintiff's claim that MLOA terminated his employment on the basis of his diabetes, MLOA contends that summary judgment is appropriate because plaintiff has come forward with no evidence from which a reasonable jury could infer that the termination was based on plaintiff's disability for purposes of establishing the third element of plaintiff's prima facie case. In the alternative, MLOA contends that summary judgment is appropriate on plaintiff's claim that MLOA terminated his employment on the basis of his diabetes because plaintiff cannot establish that MLOA's asserted reasons for terminating plaintiff's employment are pretextual.

As will be explained, summary judgment is granted in MLOA's favor on plaintiff's claim that MLOA discriminated against him on the basis of any brain injury because there is no evidence that any such injury substantially limited plaintiff's major life activities.   Summary judgment is also granted on plaintiff's claim that MLOA discriminated against him on the basis of his diabetes because there is insufficient evidence from which a jury could conclude that MLOA's reasons for terminating his employment are pretextual.

*A.    Brain Injury*

To demonstrate an actual disability under subsection (A), plaintiff must have a recognized impairment, must identify one or more appropriate major life activities, and show that the impairment substantially limits one or more of those activities.  *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014).  Here, plaintiff has identified his first disabling impairment as a traumatic brain injury and he contends that his brain injury limits him in two major areas—his organizational skills and his short-term memory capability.  As an initial matter, the court notes that the record is devoid of any evidence (aside from plaintiff's own testimony) demonstrating that plaintiff suffered a head injury or a traumatic brain injury.  Nevertheless, even assuming that plaintiff suffered a head injury or brain injury, summary judgment is appropriate because plaintiff has not come forward with any evidence demonstrating how his claimed brain injury "substantially" limits his organizational skills or his short-term memory or, more broadly, even his ability to think or concentrate.[2]  To show that his brain injury substantially limits one or more major life activity, plaintiff must show that he is substantially limited in his ability to perform the major life activity "as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  This analysis requires an "individual assessment," *id*. § 1630.2(j)(1)(iv), and may take into consideration facts such as the difficulty, effort or time required to perform the major life activity; pain experienced when performing a major life activity; and/or the way the impairment affects the operation of a major bodily function.  *Id*. § 1630.2(j)(4)(ii).  A medical diagnosis is insufficient; rather, the ADA requires

---

[2] The court assumes for purposes of this order that "organizational skills" and short-term memory capability are major life activities.

plaintiffs to offer evidence that "the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

In support of his argument that his brain injury substantially limits his organizational skills and his short-term memory, plaintiff asserts that his injury required surgery "with shunt placement and resulted in left front lobe damage causing short term memory loss and impaired organizational skills." This statement is entirely conclusory and there is no evidence in the record to support it. There is no evidence from any physician or medical expert from which a jury could conclude that a causal relationship exists between plaintiff's brain injury and his impaired organizational skills. There are no medical records establishing a connection between plaintiff's brain injury and his problems with organization. And plaintiff's impairment is not so obvious from the facts that the court may assume it substantially limits a major life activity. *See Sperry v. Maes*, 592 Fed. Appx. 688, 697 (10th Cir. 2014). While plaintiff testified that his brain injury resulted in a diminished ability to focus on detail-oriented work, this broad, bare assertion does not establish that plaintiff's brain injury has caused a substantial limitation in a major life activity. *See id.* (affidavit from family friend that plaintiff was "mentally challenged" and had trouble reading and adding simple numbers was not sufficient that plaintiff was disabled under ADA).

Plaintiff's brief is also devoid of any analysis whatsoever that speaks to the affect that plaintiff's brain injury has on his daily activities. The mere fact that the injury required surgery has no bearing on the "substantial limitation" issue. The Circuit has cautioned that a plaintiff may not simply identify an impairment and leave the court to infer that it results in substantial

limitations to a major life activity. *Scavetta v. Dillon Companies, Inc.*, 569 Fed. Appx. 622, 625 (10th Cir. 2014) (citing *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012)). Here, plaintiff has offered no evidence to support his theory that his brain injury substantially limits his ability to organize or his short-term memory as compared to most people in the general population. Summary judgment on this claim, then, is required.

B.   *Diabetes*

In its motion for summary judgment, MLOA contends that plaintiff cannot establish the third element of his prima facie case of disability discrimination with respect to his diabetes. In the alternative, MLOA contends that summary judgment is nonetheless appropriate on plaintiff's claim that MLOA discriminated against him on the basis of his diabetes because there is insufficient evidence from which a jury could conclude that MLOA's reasons for terminating his employment are pretextual. The court assumes without deciding that plaintiff has established a prima facie case of discrimination under the ADA on the basis of his diabetes. MLOA, then, must meet its burden to articulate a legitimate, nondiscriminatory reason for the decision to terminate plaintiff's employment. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id*. According to MLOA, Brian Kirk terminated plaintiff's employment because of plaintiff's overall poor performance, including low sales that had trended downward, poor communication with customers and internal operations staff and

the poor quality of his loan files. The burden of proof, then, shifts back to plaintiff to show that MLOA's proffered reason is pretextual. *See id*.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id*. at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc*., 644 F.3d 1096, 1102 (10th Cir. 2011).

In an effort to establish pretext, plaintiff contends first that Mr. Kirk changed his story about the reason for plaintiff's termination (from plaintiff's problems with "organization" to plaintiff's low production numbers) when plaintiff accused Mr. Kirk of terminating him based on a "disability issue." To begin, no jury could conclude that Mr. Kirk's explanations changed in such a manner as to permit an inference of pretext because both reasons, which were given within seconds of each other, relate to plaintiff's ultimate performance on the job. *See Doyle v. Nordam Group, Inc*., 492 Fed Appx. 846, 852-53 (10th Cir. 2012) (employer's purported change

in explanations did not permit inference of pretext where both reasons related to job performance). Moreover, both reasons offered by Mr. Kirk were objectively documented prior to the termination decision such that no reasonable jury could conclude that Mr. Kirk was lying about those reasons as a basis for the termination decision. *See id.* at 853. Even plaintiff appears to concede that Mr. Kirk's concern about plaintiff's organizational skills was the true reason for plaintiff's termination. But in the absence of any evidence (or argument for that matter) that plaintiff's organizational problems related to his diabetes in any way, plaintiff cannot demonstrate from this evidence that MLOA terminated his employment on the basis of his diabetes—the only disability that he established for purposes of this case. *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1169 (10th Cir. 2007) (plaintiff's concession of lawful motive precludes inference of discriminatory motive).

Plaintiff next contends that a reasonable jury could conclude that he was terminated based on his diabetes based solely on the fact that Mr. Kirk walked by plaintiff's desk while plaintiff was experiencing a hypoglycemic reaction and did not offer to assist plaintiff or inquire about plaintiff's well-being. No reasonable jury could draw that conclusion from the evidence. To begin, plaintiff's testimony is not sufficient for a jury to conclude that Mr. Kirk even recognized that plaintiff was experiencing a diabetes-related reaction. In fact, plaintiff's testimony suggests that his co-worker, Mr. Boyle, only recognized that he was having a reaction because he had known plaintiff for some length of time. Plaintiff offers only speculation that Mr. Kirk understood that plaintiff was having a diabetic reaction and that he decided to ignore that reaction. In any event, even assuming that Mr. Kirk witnessed the reaction and walked by plaintiff's desk without assisting and inquiring about plaintiff's well-being, no reasonable jury

11

could conclude based on that evidence alone that Mr. Kirk terminated plaintiff's employment based on his diabetes.  This is particularly true when Mr. Kirk had documented plaintiff's performance problems several months prior to the incident—and specifically identified plaintiff's problems with organization—and ultimately terminated plaintiffs for reasons identified in that performance review.  *See Doyle v. Nordam Group, Inc*., 492 Fed. Appx. 846,853 (10th Cir. 2012) (no pretext where employer cited poor performance as reason for failure to promote and performance problems were well-documented prior to promotion decision).

Finally, plaintiff attempts to establish pretext by demonstrating that his performance, contrary to MLOA's evidence, was satisfactory.  He testified, for example, that he had heard that during an annual company address, the speaker indicated that the "average loan officer was doing about $14,500 of business per month."  According to plaintiff, his numbers were "above" that company average.  Plaintiff's testimony, however, does not provide any context or time frame during which he allegedly exceeded the company average.  In fact, his own evidence on these issues reflects that his production numbers did not exceed $14,500 in January, March or April 2012 and that his average monthly sales in 2011 were below the alleged company average. He further highlights that for the month of December 2011 he had the fifth highest performance numbers on his team.  But this fact does not speak to MLOA's evidence that plaintiff's sales were consistently trending downward in early 2012 and it does not call into question Mr. Kirk's stated concerns about plaintiff's organization skills, his poor communication with customers and staff and the poor quality of his loan files.  In the end, plaintiff does not challenge the substance of the complaints that Mr. Kirk had about his performance—he simply argues that his

performance, in his mind, was satisfactory.  Such evidence is not sufficient to survive MLOA's motion.  *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1107 (10th Cir. 2008) (it is the manager's perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of his own relative performance).

## IV.     Failure to Engage in Interactive Process

In the pretrial order, Mr. Clarke asserts a claim against MLOA based on its failure to engage in the interactive process contemplated by the regulations implementing the ADA.  *See EEOC v. C.R. England, Inc*. 644 F.3d 1028, 1049 (10th Cir. 2011) ("To facilitate the reasonable accommodation, the federal regulations implementing the ADA envision an interactive process that requires participation by both parties."); 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").  According to Mr. Clarke, MLOA "refused to participate in any interactive dialogue with Mr. Clarke as to potential accommodations" for his disabilities and refused Mr. Clarke's suggestion that he be permitted to hire an assistant at his own expense.

MLOA moves for summary judgment on this claim on the grounds that Mr. Clarke, regardless of MLOA's refusal to engage in the interactive process, has not shown that the accommodation he requested (indeed, the only one he requested) was a reasonable one.  *See Hennagir v. Utah Department of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009) (even if an employer fails to fulfill its interactive obligations to help secure a reasonable accommodation, the plaintiff is not entitled to recovery unless he can also show that a reasonable accommodation

was possible); *accord Lowe v. Independent Sch. Dist. No. 1*, 363 Fed. Appx. 548, 552 (10th Cir. 2010) (interactive process is not an independent substantive requirement under the ADA but merely a means to achieve a reasonable accommodation; to establish claim, plaintiff must show that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the plaintiff).  In his deposition, Mr. Clarke testified that he offered to pay someone to help him "with the detail-oriented work of assembling files when needed," to help him stay organized, to assist him with his short-term memory problems, and to "tidy up loose ends" on his files.  MLOA contends that Mr. Clark's request to privately employ an assistant is facially unreasonable.

At the outset, summary judgment must be granted on this claim because the record does not support a reasonable inference that plaintiff's brain injury—the impairment for which he sought an accommodation—constitutes a disability for purposes of the ADA.  *See Felkins v. City of Lakewood*, 774 F.3d 647, 649 (10th Cir. 2014) (declining to address failure to accommodate issue where plaintiff failed to present sufficient evidence of disability); *Sanchez v. Vilsack*, 695 F.3d 1174, 1177-78 & n.2 (10th Cir. 2012) (to prevail on a failure-to-accommodate claim, plaintiff must demonstrate that he or she is disabled).[3]  But even assuming that plaintiff could establish a disability, summary judgment in favor of MLOA would nonetheless be warranted because the accommodation sought by plaintiff is simply not reasonable.

Notably, plaintiff does not even argue in his submissions that it is reasonable and he does not address in any respect MLOA's arguments showing why the suggestion is entirely

---

[3] Plaintiff does not contend that he required any accommodation for his diabetes other than one which MLOA undisputedly provided to him—the ability to eat lunch at any time he deemed necessary and convenient.

unworkable—including concerns stemming from the lack of an employer-employee relationship between MLOA and Mr. Clarke's personal assistant and concerns stemming from the assistant's access to the confidential financial records of MLOA's customers.  Indeed, it appears as if Mr. Clarke has abandoned this claim in his response by wholly failing to address it.  *See Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (plaintiffs "appear to have abandoned [these] claims as evidenced by their failure to seriously address them in their briefs").  In any event, the court believes that the Circuit, if faced with the issue presented here, would conclude that the ADA does not require MLOA to allow Mr. Clarke to hire his own assistant to help him accomplish the essential functions of the position.  The court is satisfied, particularly in the absence of any response from plaintiff, that the requested accommodation is unreasonable for the reasons identified by MLOA.  Because Mr. Clarke has not come forward with evidence from which a jury could determine that MLOA's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for Mr. Clarke, summary judgment on this claim is appropriate.[4]


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 34) is granted.

---

[4] Mr. Clarke has not identified any other accommodation that would have enabled him to perform his job despite his disabilities.  It is his burden on summary judgment to do so. See *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1264 & 1265 n.3 (10th Cir. 2009) (limiting review to the accommodations proposed by the plaintiff); *Mason v. Avaya Communications, Inc*., 357 F.3d 1114, 1122 (10th Cir. 2004) (on summary judgment, plaintiff carries burden of demonstrating the existence of a facially reasonable accommodation).

15

**IT IS SO ORDERED.**


Dated this 10th day of March, 2016, at Kansas City, Kansas.


                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge